FILED
2017 Jul-21 PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **CHARLES JOSEPH WILSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. 6:16-cv-01268-RDP** |
| | } | |
| **NANCY A. BERRYHILL,** | } | |
| **Commissioner of Social** | } | |
| **Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Charles Joseph Wilson ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. §§ 405(g) & 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.      Proceedings Below

On May 17, 2013, Plaintiff filed an application for Title II period of disability and DIB, as well as an application for Title XVI supplemental security income ("SSI"). (Tr. 184, 188, 212). Plaintiff claimed in these applications that his disability began on May 14, 2013. (Tr. 184, 188, 212). Both applications were initially denied on June 19, 2013. (Tr. 128, 133). On July 10, 2013, Plaintiff submitted a written request for a hearing. (Tr. 140, 142). On July 21, 2014, Plaintiff, a medical expert, and a vocational expert testified before Administrative Law Judge Michael L. Brownfield (the "ALJ"). (Tr. 56). On January 9, 2015, the ALJ issued an unfavorable decision,

determining that because Plaintiff could perform jobs existing in the national economy, he was not disabled through the date of the decision, and thus not eligible for benefits. (Tr. 66-67). Subsequently, on June 8, 2016, the Appeals Council declined Plaintiff's request for review. (Tr. 1-4). With administrative appeals exhausted, the ALJ's decision became final and subject to this court's appellate review. (*Id*.).

## II.   Facts

Plaintiff was forty-nine years old at the time of the ALJ's decision. (Tr. 68). He lives with his wife and three year-old daughter in Dora, Alabama, and has two other adult children who live in Illinois. (Tr. 78-79). Plaintiff received a tenth grade education, including some special education, and stated that he received his "high school diploma" through a program that he found "[o]ut of a puzzle book," though it was not accepted by the military. (Tr. 80).[1] Plaintiff found employment as a tank cleaner, production line assembler, warehouse worker, and delivery driver. (Tr. 97). Plaintiff was last insured on December 31, 2016 and was last employed in a job banding steel tubes at Independent Tubes in May 2012. (Tr. 86, 213, 237). However, Plaintiff only worked for four days before being terminated due to injuries to his right hand that required a brace. (Tr. 86).

### A.  Plaintiff's Testimony on His Ailments

Plaintiff last worked on May 23, 2012, and appears to have been unemployed since that time. (Tr. 86, 217). He claims that he has not been able to work because of disability since May 14, 2013, a date that coincides with his disability application. (Tr. 212-13). Plaintiff claims to suffer from various ailments, including lower back issues, carpal tunnel syndrome, diabetes, and a learning disability. (*Id*.). Plaintiff has recounted problems with his back, neck, and knees,

---

[1] The court is uncertain from this testimony whether this is a high school diploma, as the Plaintiff testified, or a GED as reflected in a disability report. (Tr. 218). The distinction is not critical in this case.

particularly his left knee. (Tr. 87). During the ALJ hearing, he claimed that he had pain in his lower back that shot down his leg, "like somebody was stabbing [him] with a knife in [his] thigh." (*Id*.). Furthermore, he testified that turning his head from side to side bothered his neck due to a nerve issue. (*Id*.). He recounted that his knee feels like "somebody [was] cutting … my ligaments with a knife," and that occasionally it filled with fluid and needed to be drained. (Tr. 88). Overall, Plaintiff rated his pain as eight on a ten point scale. (*Id*.). Plaintiff stated that his right arm and left knee get swollen often. (Tr. 91). His doctor had been unable to prescribe pain pills, and instead recommended that he take over the counter pain medication. (Tr. 88-89).[2]

Plaintiff testified that he has issues stooping and tying his shoes. (Tr. 89). Additionally, his right hand often gets cold and numb, making it difficult for him to hold things or drive. (*Id*.). Although he has been diagnosed with carpal tunnel syndrome, he testified that he was "afraid of surgery" to treat it. (*Id*.). He also claims that he is unable to stand in one place for more than five or ten minutes and cannot sit for prolonged periods without moving around a bit. (Tr. 89-90). Plaintiff stated that his wife does pretty much everything around the house, and, though he tries to help out, he spends most of the day in his recliner. (Tr. 90). Plaintiff has tried to mow his small lawn, but claims that it takes him two or three days to complete mowing because he does not "want to try to overdo it." (Tr. 92). When walking, Plaintiff sometimes experiences a shooting pain in his lower back, especially when he put pressure on the back of his heels. (Tr. 90).  He also states that he has trouble sleeping at night because of restlessness and pain. (Tr. 90-91). Plaintiff asserts that his diabetes causes him to get "weak" and "fainty." (Tr. 91).

---

[2] The record is unclear why Dr. Boswell is unable to prescribe pain medications to the Plaintiff.

**B.  Plaintiff's Medical History**

On April 17, 2013, Dr. Scott Boswell of Boswell Family Medicine performed nerve conduction testing[3] on Plaintiff which showed very severe pathology in the right radial nerve, mild pathology in the left radial nerve lateral branch, marked pathology in the right ulnar nerve, moderate pathology in the bilateral radial nerve medial branch, and mild pathology in the left first thoracic nerve. (Tr. 323). This testing also revealed mild irritation in the femoral cutaneous nerve and in the saphenous nerve, moderate pathology in the peroneal nerve, and marked pathology in the bilateral sural nerve. (Tr. 327). Dr. Boswell noted that the test results indicated cervical plexopathy and lumbosacral plexopathy, both without motor deficit. (Tr. 323, 327).

On May 3, 2013, Dr. Steven Parris conducted MRI imaging of the lumbar spine which showed vertebral body heights and marrow signal to be well-maintained throughout Plaintiff's lumbar spine with overall alignment. (Tr. 302). The MRI showed degenerative dessication and mild annular bulging of the L4-5 disc, along with mild facet arthropathy and moderate foraminal narrowing. (*Id.*). The MRI also indicated a degenerative mildly bulging disc at L4-5. (*Id.*). Furthermore, MRI imaging of the cervical spine showed vertebral body heights, marrow signal, and overall alignment to be well-maintained in Plaintiff's cervical spine. (Tr. 303). Mild bilateral unconvertebral joint hypertrophy was found at discs C3-4, C4-5, and C5-6, but there was no evidence of disc herniation or significant spinal or foraminal stenosis. (Tr. 303, 311).

On May 14, 2013, Dr. Boswell conducted a follow-up on Plaintiff's cervical and lumbar pain. (Tr. 307-09). Dr. Boswell mentioned that MRI results showed little if any pathology. (Tr.

---

[3] A nerve conduction study measures an electrical impulse's speed of conduction through a nerve. *Nerve Conduction Studies*, JOHNS HOPKINS MEDICINE HEALTH LIBRARY (Jul. 14, 2017, 8:59 AM), http://www.hopkinsmedicine.org/healthlibrary/test_procedures/neurological/nerve_conduction_velocity_ncv_92,P07657/ . Electrodes are placed on the skin over a nerve, with one stimulating the nerve and the other recording the stimulation. (*Id.*) This reading establishes a nerve conduction velocity, the speed at which the impulse travels. A lower conduction velocity may indicate neuropathy (nerve damage). (*Id.*)

307). Plaintiff had no headaches, paresthesias, confusion, or gait instability. (*Id*.). His blood pressure was 142/88. (Tr. 308). His spine was normal without deformity or tenderness. (*Id*.). He had a normal range of motion in his back, and normal symmetry, tone, strength, and range of motion in his musculoskeletal system (*Id*.). He had no effusions, instability, tenderness to palpation, or focal deficits, and his gait was within normal limits. (*Id*.).

On June 3, 2013, an echocardiogram showed no significant abnormality and a carotid duplex ultrasound was normal. (Tr. 384-85). On January 10, 2014, an MRI of Plaintiff's left knee showed a small radial tear along the posterior horn of the lateral meniscus, small effusion, and mild osteoarthritic change. (Tr. 398). On January 15, 2014, Plaintiff's lungs were clear to auscultation and percussion, his left knee had a passive full range of motion, and his gait was within normal limits. (Tr. 438). On February 24, 2014, Plaintiff complained of constant knee pain and was seen by Dr. Edward Bromberg. (Tr. 399-401). He described the pain as moderate, yet Dr. Bromberg noted a normal neurovascular in the lower left extremity. (Tr. 399-400). On March 10, 2014, Plaintiff was given a follow-up evaluation on his knee pain, again noted to be mild in severity. (Tr. 436-39).

On May 9, 2014, Plaintiff was evaluated by Dr. Alan Blotcky, a psychologist, after complaining of back pain, left leg pain, and depression. (Tr. 368-70). Plaintiff demonstrated logical and orderly thinking, with memory functioning intact, judgment grossly intact, abstract thinking limited, and insight weak. (Tr. 369). He scored 72 on the full-scale Wechsler Adult Intelligence Scale (WAIS-IV) and 60 on a global assessment of functioning (GAF) test. (Tr. 369-70). Dr. Blotcky diagnosed Plaintiff with a depressive disorder (Tr. 370), and stated that while Plaintiff was able to manage his financial affairs independently, his intellectual abilities fell at the lower

end of the borderline range. (*Id*.). Dr. Blotcky also determined that Plaintiff had moderate limitations in all of the areas of functioning evaluated. (*Id*.).

### III.    ALJ Decision

Disability under the Act is determined by applying a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Here, the ALJ recognized that Plaintiff had not engaged in substantial gainful activity since May 15, 2013. (Tr. 58). Plaintiff therefore satisfies this step.

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. The ALJ recognized that Plaintiff suffered from several impairments, including obesity, diabetes mellitus, hypertension, borderline intellectual functioning, depression, degenerative disc disease, carpal tunnel syndrome, and osteoarthritis, thus satisfying the second step.[4] (Tr. 58).

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1526. If a claimant's impairment meets or exceeds a listed impairment, the claimant is declared disabled. Here, the ALJ determined that Plaintiff's impairments did not rise to meet any of the aforementioned listings, including major dysfunction

---

[4] The ALJ found, though, that Plaintiff's chest pain was not a severe impairment. (Tr. 60).

of a joint (Listing 1.02), disorders of the spine (Listing 1.04), or mental impairments (Listings 12.04 and 12.05). (Tr. 60-62). Plaintiff therefore was not declared disabled at this step. (Tr. 60).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. Here, the ALJ determined that Plaintiff was "limited to sedentary work and non-complex job tasks," making him unable to perform past relevant work as a tank cleaner, production line assembler, warehouse worker, or delivery driver. (Tr. 66).

If the ALJ finds the claimant unable to perform his past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the Social Security Administration to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). The ALJ concluded, in agreement with the vocational expert, that Plaintiff could perform sedentary jobs that exist in the national economy, such as a wire wrapper, nut sorter, or table worker. (Tr. 67). As such, the ALJ found that Plaintiff had not been under a disability. (*Id*.).

**IV.      Plaintiff's Argument for Remand**

Plaintiff argues that remand is warranted because the ALJ's decision was not supported by substantial evidence. (Pl.'s Mem. 15). Plaintiff's argument centers on his contention that the ALJ failed to properly develop the record concerning a nerve conduction study that reflected favorably upon the Plaintiff's claims. (*Id*.). During the hearing, the medical expert, Dr. Anderson, stated that he did not "have any of that [testing] in the records" and that he was "not certain exactly what [the] test is." (Tr. 94-95). He then testified that this test was "not standard testing" and "not mainstream stuff." (Tr. 95). Despite the report using language such as "marked" and "severe" (Tr. 323, 327), Dr. Anderson questioned the test's reliability in light of the fact that "he's got a normal MRI of the cervical spine." (Tr. 96). In sum, it appears that Dr. Anderson believed, in his professional opinion, that the nerve conduction study conflicted with (and was overridden by) other medical evidence.

In making his final decision, the ALJ agreed with Dr. James Anderson, whose opinions were given great weight due to (1) "his familiarity with social security regulations," (2) his "opportunity to review the entire record," and (3) the fact that "[h]is opinions are also consistent with the great weight of the overall record." (Tr. 64-65). While Plaintiff's conduction testing found severe and marked nerve conditions and indicated both cervical and lumbosacral plexopathy, the ALJ granted placed little weight on those results because they were inconsistent with the cervical and lumbar spine MRIs and conflicted with qualitative reports of Plaintiff's range of motion. (Tr. 64). The ALJ pointed out that Plaintiff's medical records showed a normal range of back motion, a normal range of musculoskeletal system motion, a gait within normal limits, and only mild to moderate knee pain. (*Id*.). Moreover, the ALJ looked to the Function Reports, in which Plaintiff recounted that he took care of his daughter and himself, cut the grass, prepared his own meals,

cleaned, and did laundry. (*Id*.). In neither his nor his wife's Function Reports was there any indication that Plaintiff had trouble sitting. (*Id*.). Based on the "objective medical evidence" and the "claimant's reported activities of daily living," the ALJ found that there was no support for the level of pain and limitation that had been alleged. (*Id*.). In conclusion, the ALJ found that while the claimant was unable to perform past work, he was capable of performing the full range of sedentary work and thus was not eligible for DIB or SSI. (Tr. 66-67).

Plaintiff contends the ALJ erred by relying on Dr. Anderson's testimony, rather than either ordering further inquiry into the nerve conduction study's validity or ordering that further testing be conducted. (Pl.'s Mem. 15). Plaintiff argues that merely because tests are not "mainstream" does not "necessarily undermine their accuracy or truth." (*Id*. at 14). He further contends that Dr. Anderson's finding that the nerve conduction study conflicted with MRI results might be a result of the MRI being incomplete. (*Id*.). Plaintiff also challenges the ALJ's reliance on range of motion reports, questioning whether reports of motion results should be considered more accurate than the nerve conduction test. (*Id*.). Finally, Plaintiff questions whether Dr. Anderson reviewed and understood the nerve conduction tests at all. (*Id*.). According to Plaintiff, because the ALJ did not pursue more information before disregarding the nerve conduction test, he did not fulfill his "basic obligation to develop a full and fair record." (*Id*. at 12, 15) (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). As such, Plaintiff requests that the case be remanded for further evidentiary development. (Pl.'s Mem. 15).

## V.   Standard of Review

The only real issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, see 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847

F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.    Discussion

### a.    The ALJ fully and fairly developed the record.

The ALJ has a "duty to develop the record fully and fairly" in order to protect a claimant's right to due process. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Remand to further develop a record is proper where evidentiary gaps "result in unfairness or clear prejudice." *Graham*, 129 F.3d at 1423 (citation omitted). Prejudice requires "a showing that the ALJ did not have all of the relevant evidence before him in the record … or that the ALJ did not consider all of the evidence in the record in

reaching his decision." *Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 951 (11th Cir. 2010) (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). The ALJ fulfilled his duty to develop the record fully and fairly, and there is no indication of prejudice.

Plaintiff does not argue that there were substantive medical records that were never considered by the ALJ. Indeed, the record in this case is robust and appears to reflect all of the medical treatment and testing that Plaintiff has undergone. However, Plaintiff apparently desires more than the mere results of the nerve conduction testing. He contends that the ALJ, in addition to listening to the opinions of a medical expert, should have independently requested more information about the test and whether it is accurate or valid. (Pl.'s Mem. 15). Plaintiff effectively argues that the ALJ must have a basis in "scientific reason" to discount the results of a medical test. (*Id.*)

It is not the duty of the ALJ to actively attempt to bolster the scientific reliability or credibility of Plaintiff's medical test.[5] That responsibility lies with Plaintiff, who bears the burden of showing that he is disabled and producing evidence in support of that claim. *Ellison*, 355 F.3d at 1276. While the ALJ may have the duty to establish and consider a record that accurately and completely reflects Plaintiff's medical history, it is not his duty to make Plaintiff's case for him. The ALJ is not obligated to seek "independent, additional expert medical testimony" where the record already includes information sufficient to make a decision, such as opinions by other physicians. *Wilson*, 179 F.3d at 1278. If there are questions as to the validity of a method of testing, it is logical that the advice of an experienced medical expert, like Dr. Anderson, would be sufficient

---

[5] If this action had been brought prior to February 23, 2012, the result very well may have been different. Prior to that date, the Social Security Administration's regulations placed an "affirmative duty on the ALJ to recontact a medical source 'when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Jones v. Astrue*, No. 1:10CV47-WC, 2011 WL 833343 at *4 (M.D. Ala. Mar. 7, 2011) (quoting 20 C.F.R. 404.1512(e)(1)). However, this affirmative duty was removed by the SSA in 2012. *See How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10651 (Feb. 23, 2012).

to establish doubt as to the viability of the procedure. Any additional testimony regarding validity or accuracy of records is the responsibility of Plaintiff. *See T.R.C. ex rel. Boyd v. Commisioner, Social Sec. Admin.*, 553 F. App'x 914, 919 (11th Cir. 2014) (holding that there was no failure to develop the record where the ALJ did not re-contact an expert for questions regarding the validity of an IQ score and did not obtain an updated IQ score.)

Even in the instance of an inconsistent report, it must be "so incomplete and inadequate that the ALJ cannot make a decision based on it" before an ALJ is obligated to recontact the physician responsible. *Hardy v. Astrue*, No. 2:11-cv-01853-LSC, 2012 WL 2357639 at *5 (N.D. Ala. June 15, 2012). There is no onus on the part of the ALJ to actively work to undermine the testimony of a neutral expert. That is the job of Plaintiff and his attorney, as a part of their burden of proving disability. Here, the ALJ found that the nerve conduction study was inconsistent with other evidence present; however, there is no argument that the results themselves were incomplete. *See id.* (concluding that an ALJ is capable of discounting an inconsistent yet complete report without seeking additional medical advice or verification). The completeness of the record does not hinge on establishing the incontrovertible scientific certainty of every test and finding, and the fact that the ALJ did not pursue additional evidence regarding why the nerve conduction study was inconsistent does not create prejudice or a failure to develop the record.

Alternatively, Plaintiff complains that the ALJ unjustly "ignored" evidence in the record -- namely, the nerve conduction study test results -- by relying solely on the testimony of the medical expert, Dr. Anderson. It is true that the ALJ's findings must be "grounded in the entire record" and cannot focus solely on one aspect of the evidence while disregarding contrary evidence. *Thomason v. Colvin*, No. 2:14-CV-01725-SLB, 2016 WL 695624 at *6 (N.D. Ala., Feb. 22, 2016). Here, however, the ALJ did not "ignore" or "disregard" the evidence at issue as much

as "discount" it. Indeed, the ALJ explicitly referenced the nerve conduction study in his ruling, clearly showing that it was not "ignored." (Tr. 64-65). In *Thomason*, the ALJ found that the claimant only had moderate pain, despite some exam notes that showed he had difficulty in mobility. 2016 WL 695624 at *6. Even though the ALJ ultimately did not give those exam notes much weight, as other medical records and examination reports contradicted them, his explicit mention of the exam notes in his decision shows that he expressly considered that evidence. *Id*. An ALJ may discount evidence which is inconsistent with other findings and notes while still fully considering that evidence. *Posey v. Colvin*, No. 7:17-cv-01309-TMP, 2014 WL 4829596, at *5 (N.D. Ala. Sept. 29, 2014). In this case, the ALJ clearly mentioned the nerve conduction study in his decision, but ultimately assigned it little weight. There is no basis for Plaintiff's argument that the ALJ did not consider the record fully and completely in making his decision.[6]

Similarly, Plaintiff's "scientific reason" argument is off the mark. To require a scientific reason to disregard evidence would effectively shift the burden of proof from the claimant to the ALJ. That is, if such a standard were applied, rather than requiring the claimant to prove that medical evidence shows he is disabled, it would fall to the ALJ to find a scientific reason to reject evidence which cuts against a claimant's disability claim. Obviously, the burden is on the claimant to establish his disability. It is entirely reasonable for the ALJ to rely upon the opinion of a medical expert when determining how much weight to place on medical test results, especially where other

---

[6] Even if the ALJ had a more heightened "special" duty in this case (and, to be clear, he did not), that duty was fulfilled. A "special duty" arises only where a claimant without counsel has not waived his right to representation by counsel, an issue that is not present in this case. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (finding that such a special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."). Remand in such cases maybe be proper where, for example, an ALJ fails to obtain records about which the claimant testified, fails to get a rehabilitation report that had been requested, or fails to question an available witness willing to testify to the severity of the plaintiff's disability. *Graham*, 129 F.3d at 1423 (discussing *Brown*, 44 F.3d at 934-36). On the other hand, an ALJ's opinion is not unfair or prejudiced where there are "no allegations that the record as a whole was incomplete or inadequate" and where the ALJ's opinion was "quite thorough." *Id*. (citing *Kelley* 761 F.2d at 1540). Likewise, no prejudice exists where an ALJ's questioning was comprehensive, consideration of medical history was thorough, and there was no allegation of undiscovered facts or an undeveloped avenue of inquiry. *Id*.

objective tests and the treating physician's own observations seem to contradict those results.[7] Here, the record was properly developed, all relevant parts of the record were properly considered, and no part of the ALJ's action approaches the level of prejudice required for remand.

### b. The ALJ's decision is supported by substantial evidence.

Finally, the ALJ's determinations that Plaintiff could perform sedentary work and that such jobs existed in the national economy are supported by substantial evidence. Plaintiff claims that his disability began on May 14, 2013 due to lower back issues, carpal tunnel syndrome, diabetes, and a learning disability. (Tr. 217). Additionally, he complains of neck and knee pain. (Tr. 87).

Despite Plaintiff's subjective testimony about these issues, the ALJ found, based on the record and the testimony of a vocational expert, that Plaintiff could perform sedentary work as a wire wrapper, nut sorter, or table worker. (Tr. 66-67). The ALJ concluded that Plaintiff's testimony was contradicted by unremarkable MRI results, observations of normal ranges of motion and gait by his physicians, and a report of only moderate knee pain. (Tr. 64). Furthermore, Plaintiff's own reports about his functional abilities to do yard work, make meals, clean, and take care of his daughter indicated to the ALJ that he could perform sedentary work within the bounds of his ailments. (Tr. 64). Additionally, the ALJ adequately explained why Plaintiff's mental and intellectual impairments did not prevent him from conducting non-complex work. (Tr. 65). All of these observations, combined with the analysis of the medical records and expert testimony of Dr. Anderson, constitute substantial evidence in support of the ALJ's findings.

---

[7] The ALJ stated that the results of Dr. Boswell's nerve conduction testing (Tr. 323, 327) were not consistent with other findings, including unremarkable MRI results from Dr. Parris (Tr. 302-03) and observations of normal gait and movement (Tr. 307-08, 438). The ALJ may give the opinion of a treating physician little weight if there is good cause, including when the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the treating physician's opinion is inconsistent with the doctor's own medical records. *Hughes v. Comm'r of Social Sec. Admin.*, 486 F. Appx. 11, 13 (11th Cir. 2012). If a treating physician's opinion may be discounted based on these factors, it seems logical that test results inconsistent with other evidence could be subject to a similar standard.

Finally, supposing Plaintiff's nerve conduction test results were deemed to be credible or reliable (and to be clear, this court has not so found), there would still be substantial evidence in support of the ALJ's findings. "[E]ven if the proof preponderates against it," the ALJ's decision must be affirmed if it "is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *see also Gardner v. Colvin*, No. 2:12-cv-02078-LSC, 2013 WL 3873990 (N.D. Ala., Jul. 25, 2013). While acceptance of the nerve conduction test would certainly weigh in Plaintiff's favor, it is not dispositive in this case, and certainly does not change the fact that the evidence considered by the ALJ in his decision was substantial, ample, valid, and sufficient to support the ALJ's findings.

## VII.    Conclusion

The court concludes that the ALJ fully and fairly developed the record during the administrative hearing. Furthermore, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that he applied the proper legal standards in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 21, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE